UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DOMINIQUE TAMARA BAST,<br><br>     Petitioner,<br><br> v.<br><br>ANDREW SAUL,[1]<br>Commissioner of Social Security<br>Administration,<br><br>     Respondent. | Case No. 2:18-cv-00547-CWD<br><br>**MEMORANDUM DECISION<br>AND ORDER** |

## INTRODUCTION

Currently pending before the Court is Dominique Bast's Petition for Review of the

Respondent's denial of social security benefits, filed on September 20, 2018. (Dkt. 1.)

The Court has reviewed the Petition for Review and the Answer, the parties' memoranda,

and the administrative record (AR), and for the reasons that follow, will remand the

decision of the Commissioner.

---

[1] Andrew Saul was sworn in as Commissioner of Social Security on June 17, 2019.
Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew Saul should be
substituted for Acting Commissioner Nancy A. Berryhill as the Respondent in this suit. No
further action needs to be taken to continue this suit by reason of the last sentence of section
205(g) of the Social Security Act, 42 U.S.C. § 405(g).

**MEMORANDUM DECISION AND ORDER - 1**

## PROCEDURAL AND FACTUAL HISTORY

On May 15, 2015, Petitioner protectively filed an application for Title II benefits for a period of disability beginning November 2, 2013, based upon physical impairments of obesity and bilateral derangement of ankles, and mental impairments of depressive disorder, anxiety/panic disorder, adjustment disorder, somatic symptom disorder, and posttraumatic stress disorder. This application was denied initially and on reconsideration, and a hearing was held on April 25, 2017, before Administrative Law Judge (ALJ) Stewart Stallings. After hearing testimony from Petitioner and a vocational expert, ALJ Stallings issued a decision on November 7, 2017, finding Petitioner not disabled. Petitioner timely requested review by the Appeals Council, which denied her request for review on July 20, 2018.

Petitioner timely appealed this final decision by filing a complaint on September 20, 2018, in the United States District Court for the Eastern District of Washington. Thereafter, venue was determined to be proper in the District of Idaho, resulting in a transfer of this matter to the Court on December 7, 2018. The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

At the time of Petitioner's disability onset date of November 2, 2013, she was 40 years of age. Petitioner has a high school education and achieved an Associate of Science degree in Justice Administration and General Education. Her prior work experience includes work as a cabinet assembler, social services aid, cafeteria aid, nurse assistant, driver, and store laborer.

## SEQUENTIAL PROCESS

The Commissioner follows a five-step sequential evaluation for determining whether a claimant is disabled. See 20 C.F.R. §§ 404.1520, 416.920. At step one, it must be determined whether the claimant is engaged in substantial gainful activity. The ALJ found Petitioner had not engaged in substantial gainful activity since her alleged onset date of July 25, 2013. At step two, it must be determined whether the claimant suffers from a severe impairment. The ALJ found Petitioner's physical and mental impairments severe within the meaning of the Regulations.

Step three asks whether a claimant's impairments meet or equal a listed impairment. The ALJ considered Listings 1.02 (Major dysfunction of a joint); 9.00 (Endocrine disorders); 12.04 (Depressive, bipolar and related disorders); 12.06 (Anxiety and obsessive-compulsive disorders); 12.07 (Somatic symptom and related disorders); and 12.15 (Trauma-and stressor-related disorders). The ALJ found that Petitioner's impairments did not meet or equal the criteria for any listed impairment. (AR 20-21.) If a claimant's impairments do not meet or equal a listing, the Commissioner must assess the claimant's residual functional capacity (RFC) and determine, at step four, whether the claimant has demonstrated an inability to perform past relevant work.

The ALJ found Petitioner was not able to perform any of her past relevant work. If a claimant demonstrates an inability to perform past relevant work, the burden shifts to the Commissioner to demonstrate, at step five, that the claimant retains the capacity to make an adjustment to other work that exists in significant levels in the national

economy, after considering the claimant's residual functional capacity, age, education and work experience.

The ALJ determined Petitioner retained the RFC to perform sedentary work, as defined in 20 C.F.R. § 404.1567(a), with limitations. These limitations included the ability to sit up to six hours and stand or walk up to two hours in an eight-hour workday, with normal breaks. Petitioner would require a sit/stand option allowing her to stand up to five minutes per hour while remaining at a workstation. In addition, the ALJ limited her to occasional lifting and carrying of up to ten pounds; occasional use of bilateral foot controls; occasional climbing of ramps and stairs; and occasional use of moving machinery and exposure to unprotected heights. Regarding mental health limitations, the ALJ limited Petitioner to low-stress positions and the performance of simple, routine tasks in which concentration is not critical. (AR 21.) In determining Petitioner's RFC, the ALJ found Petitioner's impairments could reasonably be expected to cause the symptoms she alleged, but that her statements about the intensity, persistence, and limiting effects of her conditions were not entirely consistent with the medical evidence and her daily activities. (AR 23.)

Based upon his evaluation of the record and the hypotheticals posed to the vocational expert, the ALJ found Petitioner was able to perform work as an addresser, final assembler, and microfilm document preparer, all of which constitute unskilled, sedentary work jobs available in significant numbers in the national economy. Consequently, the ALJ determined Petitioner was not disabled.

**MEMORANDUM DECISION AND ORDER - 4**

## STANDARD OF REVIEW

Petitioner bears the burden of showing that disability benefits are proper because of the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A); *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971). An individual will be determined to be disabled only if her physical or mental impairments are of such severity that she not only cannot do her previous work but is unable, considering her age, education, and work experience, to engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. § 423(d)(2)(A).

On review, the Court is instructed to uphold the decision of the Commissioner if the decision is supported by substantial evidence and is not the product of legal error. 42 U.S.C. § 405(g); *Universal Camera Corp. v. Nat'l Labor Relations Bd.*, 340 U.S. 474 (1951); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (as amended); *DeLorme v. Sullivan*, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a scintilla but less than a preponderance, *Jamerson v Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997), and "does not mean a large or considerable amount of evidence." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

The Court cannot disturb the Commissioner's findings if they are supported by substantial evidence, even though other evidence may exist that supports the Petitioner's claims. 42 U.S.C. § 405(g); *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). Thus, findings of the Commissioner as to any fact, if supported by substantial evidence, will be conclusive. *Flaten*, 44 F.3d at 1457. It is well-settled that, if there is substantial evidence to support the decision of the Commissioner, the decision must be upheld even when the evidence can reasonably support either affirming or reversing the Commissioner's decision, because the Court "may not substitute [its] judgment for that of the Commissioner." *Verduzco v. Apfel*, 188 F.3d 1087, 1089 (9th Cir. 1999).

When reviewing a case under the substantial evidence standard, the Court may question an ALJ's credibility assessment of a witness's testimony; however, an ALJ's credibility assessment is entitled to great weight, and the ALJ may disregard a claimant's self-serving statements. *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). Where the ALJ makes a careful consideration of subjective complaints but provides adequate reasons for rejecting them, the ALJ's well-settled role as the judge of credibility will be upheld as based on substantial evidence. *Matthews v. Shalala*, 10 F.3d 678, 679-80 (9th Cir. 1993).

## DISCUSSION

Petitioner argues the ALJ erred at step four, alleging the following: (1) failure to give clear and convincing reasons in support of his adverse credibility finding; (2) failure

to give reasons germane to each lay witness in support of his decision to discount lay witness testimony; and (3) improper weight given to the medical opinion evidence.

As more explained below, the Court finds the ALJ erred with respect to the three assignments of error identified by Petitioner.

**1.      Credibility**

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). The ALJ's findings must be supported by specific, cogent reasons. *Reddick*, 157 F.3d at 722. If a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints of pain based solely on lack of medical evidence. *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005). *See also Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997) (holding that an ALJ may not discredit a claimant's subjective testimony on the basis that there is no objective medical evidence that supports the testimony). Unless there is affirmative evidence showing that the claimant is malingering, the ALJ must provide clear and convincing reasons for rejecting pain testimony. *Burch*, 400 F.3d at 680. General findings are insufficient; the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints. *Reddick*, 157 F.3d at 722.

The reasons an ALJ gives for rejecting a claimant's testimony must be supported by substantial evidence in the record. *Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1296 (9th Cir. 1999). If there is substantial evidence in the record to support

the ALJ's credibility finding, the Court will not engage in second-guessing. *Thomas v. Barnhart*, 278 F.3d 957, 959 (9th Cir. 2002). When the evidence can support either outcome, the Court may not substitute its judgment for that of the ALJ. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

In evaluating credibility, the ALJ may engage in ordinary techniques, including consideration of claimant's reputation for truthfulness and inconsistencies in claimant's testimony, or between claimant's testimony and conduct, claimant's daily activities, claimant's work record, and testimony from physicians and third parties concerning the nature, severity and effect of the symptoms of which claimant complains. *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002). Also, the ALJ may consider the location, duration and frequency of symptoms; factors that precipitate and aggravate those symptoms; the amount and side effects of medications; and treatment measures taken by the claimant to alleviate those symptoms. *See* Soc. Sec. Ruling 96-7p.

Petitioner suffered a tear of her left Achilles tendon in 2008 and underwent left Achilles rupture surgery in 2010. (AR 19, 432.) She was able to continue working at her job as a cabinet assembler with accommodations until her employer terminated her employment in 2011, as she could no longer be accommodated with a sedentary position. (AR 39.) Petitioner complained of continued pain in her left lower extremity and difficulty ambulating, which resulted in her favoring her left side. (AR 48, 432.) As a result, and as Petitioner testified, she injured her right foot and experienced increased pain in her right lower extremity, beginning in January 2012. (AR 19, 47 - 48, 432.) In

September of 2015, x-ray imaging of the right foot showed ossific fragments along the dorsal aspect of the right navicular, suggesting prior dorsal capsular avulsion, as well as mild arthritis with degenerative spurring and chronic lateral ligamentous injury. (AR 19, 444 - 445.) X-ray imaging of the left foot, taken in September of 2015, revealed a sclerotic rimmed lytic lesion, likely related to her prior Achilles surgery. (AR 19, 448.)

Petitioner complains of continuous pain, spasms, numbness, weakness and radiating pain in her lower extremities which worsens with prolonged standing, walking, sitting and laying down. (AR 50, 433, 468.) Her injuries have resulted in abnormal, compensating posture and gait, which may be the source of the additional pain Petitioner experiences in her upper legs and back. (AR 19, 55, 454, 469.) During the hearing, Petitioner testified that her pain has been worsening, and that she has been falling on the ground as a result of her legs giving out. (AR 45, 54.) She estimated that she falls approximately fifteen times each month. (AR 55.) She testified that she has good days and bad days. (AR 51.) On a good day, she can go outside for an hour, and cook meals for her family, which she testified occurs every two weeks. (AR 51.) Otherwise, she stated that she is confined to her house, and often spends her days in her recliner or in bed. (AR 49 – 51; 302 - 303.)

While she can care for her personal needs, she stated that she must sit down to dress, care for her hair, and shave, and she uses the bath instead of taking a shower. (AR 303.) Her children and husband help her cook, and other than the two days each month she estimates she feels well enough to cook meals, she otherwise prepares microwave

meals because she cannot stand on her feet to prepare food. (AR 304.) She is able to sit and fold laundry, sit and pick weeds outside, and clean her bedroom "with help." (AR 304.) She estimates she can walk about 100 feet on a good day, and only 20 feet on a bad day, and must rest for at least 15 – 25 minutes and up to one hour before resuming walking. (AR 307.)

Petitioner participated in physical therapy between October 12, 2015, and November 6, 2015. (AR 454 – 475.) She engaged in range of motion exercises, core stabilization exercises, and balance exercises. (AR 459 - 460.) She also was given a home exercise program. (AR 462.) She reported to the physical therapist that soaking in her hot tub at home relieves pain, and while she is in the hot tub, she frequently will exercise by performing leg lifts in the water. (AR 470, 471; *see also* AR 537, February 16, 2017 treatment record noting Petitioner does PT exercises "in jacuzzi.")

Petitioner underwent a consultative physical examination, performed by Rex Head, M.D., on September 16, 2015. (AR 432.) Dr. Head noted Petitioner appeared to be in "obvious pain," and she walked with a limp. (AR 434.) Upon examination, Dr. Head recorded that the joints in Petitioner's toes, feet, and ankles all appeared abnormal, and Petitioner exhibited tenderness in these joints. (AR 435 – 436.) He also recorded diffuse tenderness over her trochanteric bursae and sacral and lumbar tenderness. (AR 436.) Dr. Head did not report swelling, deformity, joint laxity or effusion, and recorded negative straight leg raise test results bilaterally with normal range of motion and curvature of the spine. (AR 436.) His diagnosis with respect to Petitioner's physical impairments was

status post-surgery for left ruptured Achilles tendon, and chronic lower extremity pain as well as foot pain. (AR 437.)

The ALJ found Petitioner was less than fully credible based upon her level of daily activity and the relatively mild objective findings. First, concerning Petitioner's activities, he cited her ability to engage in activities of self-care, including dressing, grooming and bathing. (AR 23.) He also noted she prepares "simple meals regularly, and more complex meals on 'good' days," and completes household chores on a "regular basis." (AR 23.) He also referenced her report that she "frequently exercises." Accordingly, the ALJ found Petitioner's level of activity is "minimally limited and cannot be reconciled with the considerable severity alleged." (AR 23.)

While evidence of Petitioner's daily activities is properly considered in making a credibility determination, Petitioner need not be utterly incapacitated to be eligible for benefits. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir.1989) *see also Orn v. Asture*, 495 F.3d 625, 639 (9th Cir. 2007) (daily activities are a valid reason to discount credibility if they contradict claimant's other testimony). The "mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability." *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001). Put differently, "an ALJ may not reject a claimant's testimony simply because she engages in minimal daily activities despite her impairments." *Jimenez v. Astrue*, No. CV 08-08403-MLG, 2009 WL 2589780, at *4 (C.D. Cal. Aug. 21, 2009). Rather, "[i]t is only where the level of activity

is inconsistent with a claimed limitation that the activity has any bearing on credibility." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). Daily activities, therefore "may be grounds for an adverse credibility finding if a claimant is able to spend a substantial part of h[er] day engaged in pursuits involving the performance of physical functions that are transferable to a work setting." *Orn*, 495 F.3d at 639. "[T]o conclude that a claimant's daily activities warrant an adverse credibility determination[,]" however, "[t]he ALJ must make specific findings relating to [the daily] activities and their transferability [.]" *Id*.

The Court's examination of the record as a whole shows the ALJ erred in characterizing Petitioner's statements to reach the conclusion she is exaggerating her pain symptoms. Examples include the ALJ's characterization that Petitioner prepares simple meals "regularly," and more complex meals on "good days," with no discussion regarding the number of "good days," or the fact that simple meals in Petitioner's case involve microwaveable meals. The same is true of his characterization of her ability to complete household chores on a "regular" basis, with no discussion concerning the frequency of these activities, or her account that she receives help with all of them. The most glaring error, however, is the ALJ's characterization that Petitioner "frequently exercises," when the record citation by the ALJ reveals that Petitioner's exercise consists of raising her legs up and down while soaking in the hot tub to relieve pain. In essence, the ALJ developed his evidentiary basis by not fully accounting for the context of the statements or all parts of Petitioner's testimony or reports. Further, the ALJ's determination is lacking any indication that he made any attempt to relate Petitioner's

daily activities to any transferrable work skills necessary to perform sedentary work, which requires the ability to sit up to six hours and stand or walk up to two hours each day. The ALJ's paraphrasing of select items in the record is not entirely accurate. The Court finds the conclusions reached by the ALJ are not supported by substantial evidence based on the record as a whole.

Turning to the objective medical evidence, the ALJ relied upon Petitioner's diagnostic imaging results and the relatively normal physical examination findings noted by Dr. Head, to discredit Petitioner's testimony. Specifically, he noted Petitioner's x-ray images exhibit "largely mild abnormalities," and he relied upon Dr. Head's findings to conclude that Petitioner's "significant functional limitations" are not as severe as alleged, and are "adequately accounted for in the exertionally sedentary functional capacity assigned." (AR 23.)

The ALJ's conclusory determination that objective evidence does not support the degree of limitation Petitioner described constitutes error. The ALJ may not discredit Petitioner's testimony of pain and deny benefits "solely because the degree of pain alleged by the claimant is not supported by objective medical evidence." *Bunnell v. Sullivan*, 947 F.3d 341, 347 (9th Cir. 1991). "[P]ain is a completely subjective phenomenon" and "cannot be objectively verified or measured." *Fair*, 885 F.2d at 601.

Further, the ALJ's determination does not indicate he considered Petitioner's other treatment records. For instance, the ALJ did not acknowledge the consistent prescription of significant pain medications and muscle relaxants, nor did the ALJ acknowledge

Petitioner's physical therapy treatment records. A review of the same indicates Petitioner's regular medications prescribed between 2015 and 2017 include hydrochlorothiazide as needed for swelling; oxycodone-acetaminophen, prescribed four times daily, with the caveat that Petitioner refrain from driving; and Soma at bedtime. (AR 380, 537.) Her gait on June 11, 2015, was noted as not normal. (AR 380.) Also, Petitioner reported on that visit that her pain medications were "not really working anymore," but the "jacuzzi helps." (AR 380.) During a consultative examination with Dr. William Sims on September 21, 2015, Petitioner reported her pain level at "10/10," that her ankle will "give way," and that her pain symptoms worsened when "sitting, walking or climbing stairs." (AR 483-484.) She attended formal physical therapy treatment between October 12, 2015, and November 6, 2015, for a total of seven visits. (AR 454 – 477.) Upon discharge, she was given a home exercise program suitable to perform in the hot tub, and the therapist noted her rehabilitation potential as "fair." (AR 454.) Petitioner reported improvement in her back pain, but no improvement in her leg pain, upon discharge from physical therapy. (AR 454.)

There is no indication the ALJ considered these records with respect to his credibility finding, and he did not acknowledge their relevance for assessing her credibility. This is despite ample evidence in the record of her consistent reports of chronic pain, observations of gait instability, and repeated prescriptions for significant pain medication and muscle relaxants.

The Court therefore finds the ALJ's evaluation of the intensity, persistence, and

limiting effects of Petitioner's pain is legally insufficient and not supported by substantial evidence in the record as a whole.

## 2.    Lay witness testimony

Petitioner's husband, Matthew Bast, completed two third party function reports in 2015, and in 2017, several family members wrote letters on her behalf. These family members included Petitioner's two sons, her nephew, and her son's fiancé, all of whom live in the area or with Petitioner, and who provide her with care and assistance. (AR 22.)

Petitioner's son, Matthew Moyses, reported moving in with his mother and stepfather in 2012 to help her around the house and drive her to doctor's appointments. (AR 366.) He observed her fall fifteen times. (AR 366.)[2] Between 2012 and 2017, he indicated the time she spent in her room increased due to the progression of her pain. (AR 366.) Another son, George Sanchez, who also assists with caring for his mother, corroborated his brother Mathew's account of Petitioner's activities. (AR 369.) Nicole Adams, who is engaged to George Sanchez, indicates she has aided Petitioner since 2013, by helping her out of the bath, ensuring she does not fall, and helping around the house with chores and cooking. (AR 370.)

Petitioner's nephew, Christian McInturff, also moved into Petitioner's home in 2012, to help with chores and errands. (AR 367.) He assists by cleaning, doing dishes, running errands, or driving Petitioner to doctor's appointments. He corroborated his

---

[2] Mr. Moyses does not elaborate on the frequency of Petitioner's falls, and the record is not fully developed in this regard.

cousin Mathew's account that Petitioner spends up to 80% of her time in bed due to pain, and he has seen Petitioner fall on several occasions. All four family members indicate that they take turns spending time with Petitioner to ensure she is not left alone in case she falls.

On December 7, 2015, Petitioner's husband reported that, while he is working outside the home during the day, someone prepares his wife's meals for her, and she prepares herself only frozen meals two or three times per week. (AR 293, 333 – 334.) He states she is limited in her ability to stand, and her housework consists of cleaning her desk area and weeding the garden, but that she must sit while performing these tasks. (AR 334 – 335, 339.) He reports also that his wife is unable to walk more than 30 - 40 yards before needing to rest. (AR 337.)

The ALJ gave these lay witness accounts only "partial weight," because he found Petitioner's ability to exercise and to perform daily activities is inconsistent with the lay witness information, referencing her ability to cook meals, perform chores, and independently complete activities of self-care. (AR 23.) The ALJ concluded also that the "objective record and medical opinion evidence" does not establish limitations to the

extent alleged. (AR 23.)[3]

The testimony of lay witnesses about their own observations regarding the claimant's impairments constitutes competent evidence that must be considered and evaluated by the Commissioner in the disability evaluation. *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006); *Stout v. Commissioner, Social Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006). Such testimony cannot be discounted unless the ALJ gives reasons that are germane to that witness. *Carmickle v. Comm'r, Social Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008); *Stout v. Comm'r*, 454 F.3d at 1053 (citing *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993)); *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). Such reasons include conflicting medical evidence, prior inconsistent statements, or a claimant's daily activities. *Lewis*, 236 F.3d at 511–12.

In rejecting lay testimony, "the ALJ need not cite the specific record as long as 'arguably germane reasons' for dismissing the testimony are noted, even though the ALJ does 'not clearly link his determination to those reasons,' and substantial evidence supports the ALJ's decision." *Holzberg v. Astrue*, No. C09-5029BHS, 2010 WL 128391 at *11 (W.D. Wash. Jan. 11, 2010) (citing *Lewis*, 236 F.3d at 512). However, "where the

---

[3] The ALJ included also the close familial relationship between the lay witnesses and Petitioner as a reason to discount their opinions. However, this is not a valid reason to reject lay testimony. *Gutierrez v. Colvin*, 208 F.Supp.3d 1117, 1124-25 (E.D. Cal. Sept. 26, 2016) (finding regulations specifically require consideration of "non-medical" sources, and rejecting supposed financial interest in a favorable adjudication and family bias as germane reasons for discrediting lay testimony), *cited in Sanderson v. Berryhill*, No. 1:16-CV-00242-CWD, 2017 WL 3974235, at *8 (D. Idaho Sept. 8, 2017). Respondent did not defend the ALJ's credibility findings on this basis.

ALJ's error lies in failure to properly discuss competent lay testimony favorable to the claimant, a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Stout v. Comm'r of Soc. Sec. Admin.*, 454 F3d 1050, 1056 (9th Cir. 2006).

First, it is unclear how the various family members' reports are inconsistent with Petitioner's ability to exercise and her daily activities. Rather, the evidence in the record indicates the lay witnesses' reports corroborate Petitioner's account of her limited daily activities. And, as mentioned above, Petitioner does not exercise as that activity is commonly understood to occur. She performs her home exercise program while in the jacuzzi. Put simply, there are no inconsistencies between the Petitioner's activities and the lay witness testimony. Additionally, the ALJ made no effort to link his observation that the lay witness reports conflict with her reported daily activities to medical evidence in the of record. The Court's examination of the medical evidence as a whole, as discussed above, reveals that it is consistent with Petitioner's reported activity level and that corroborated by the lay witnesses. Last, the ALJ did not explain what portions of the lay witness accounts he credited, despite his allocation of "partial" weight to the same.

Because the ALJ failed to provide germane reasons for rejecting competent lay witness testimony and did not adequately rebut the witnesses' observations regarding the effect of Petitioner's pain symptoms on her daily activities, the Court concludes the error was not harmless. The Court therefore finds substantial evidence does not support the

ALJ's determination to give the lay witness opinions "partial weight."

**3.     Physician Testimony**

Petitioner contends the ALJ erroneously rejected the opinions of the consultative examining physicians, Rex Head, M.D., and Marie Parkman, Psy.D., because the ALJ did not properly weigh their opinions, and erroneously concluded the opinions were not supported by or consistent with other medical evidence. The Court agrees.

The Ninth Circuit Court of Appeals distinguishes among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians). *Lester v. Chatter*, 81 F.3d 821, 830 (9th Cir. 1995). As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant. *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987); 20 C.F.R. § 404.1527(c)(2).[4]

If the record as a whole does not support the physician's opinion, the ALJ may reject that opinion. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004). Items in the record that may not support the physician's opinion include clinical findings from examinations, conflicting medical opinions, conflicting physician's treatment notes, and the claimant's daily activities. *Id.*; *Bayliss v. Barnhart*, 427 F.3d

---

[4] The evaluation of opinion evidence is set forth in 20 C.F.R. § 404.1527(c)(2) for claims, such as Petitioner's, filed before March 27, 2017. For claims filed on or after March 27, 2017, the rules in 20 C.F.R. § 404.1520c apply. *See* 20 C.F.R. § 404.1527 (2019); 20 C.F.R. § 404.1520c (2019).

1211 (9th Cir. 2005); *Connett v. Barnhart*, 340 F.3d 871 (9th Cir. 2003); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595 (9th Cir. 1999). An ALJ also may reject a physician's opinion if it is based "to a large extent" on a claimant's self-reports that have been property discounted as not credible. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008).

### A.  *Dr. Rex Head*

Dr. Head performed a consultative physical examination of Petitioner in September of 2015. He provided a statement of abilities, indicating that Petitioner could lift and carry up to 10 pounds; sit at one time for 45 minutes, and stand for 45 minutes; walk without a break on flat level ground without a break for 100 feet; and had a limited ability to stoop, bend, balance, and crouch. (AR 437.) Dr. Head indicated his assessment was based upon Petitioner's self-report, and that he did not independently corroborate her abilities. Nonetheless, he indicated that there were "no significant discrepancies, inconsistencies, or symptom magnification apparent in the exam." (AR 438.)

The ALJ gave Dr. Head's opinion regarding Petitioner's physical limitations "little weight," finding his opinion inconsistent with the record and based wholly on Petitioner's reports, which he found to not be credible. He cited to Dr. Head's examination findings showing no swelling and normal range of motion and curvature of the spine as justification for his conclusion. (AR 24.)

An ALJ may reject a physician's opinion if it is based "to a large extent" on a claimant's self-reports that have been properly discounted as incredible. *Morgan v.*

*Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999) (citing *Fair v. Bowen*, 885

F.2d 597, 605 (9th Cir. 1989)). However, the Court concludes the ALJ's credibility

determination is in error. The ALJ may not rely upon an erroneous credibility

determination as a reason to reject Dr. Head's opinion regarding Petitioner's physical

limitations.

An ALJ may reject a physician's opinion based upon a finding that it is

inconsistent with medical records. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir.

2008). Here, however, the ALJ failed to discuss the medical records as a whole. For

instance, he did not explain how a finding that Petitioner had no swelling and normal

range of motion in her spine undermined Dr. Head's other examination findings, which

revealed abnormalities in her toes, feet, ankles, and knees. (AR 436.) Nor did the ALJ

account for Dr. Head's observation that Petitioner presented in obvious pain, walked with

a limp, and exhibited no symptom magnification. (AR 434.) And last, the ALJ did not, as

discussed above, consider Petitioner's other medical records, which revealed consistent

treatment for pain with narcotic medication and physical therapy, where her prognosis

was reportedly fair.

The Court therefore finds the ALJ did not provide specific and legitimate reasons

supported by substantial evidence in the record for rejecting Dr. Head's opinions.

### Marie Parkman, Psy.D.

Dr. Parkman completed a consultative examination of Petitioner in September of

2015, consisting of a clinical interview and psychological testing. She rated Petitioner's

abilities in the areas of concentration, persistence and pace as "good," "fair," or "poor."

For instance, Dr. Parkman is of the opinion that Petitioner had a "good" ability to

complete simple and repetitive tasks, but that her ability in the following areas is poor:

the ability to sustain an ordinary routine without special supervision; the ability to

maintain regular attendance in the workplace; the ability to complete a normal

workday/workweek without interruptions from her pain disorder; and the ability to

sustain efforts over tasks over time.

> The ALJ characterized Dr. Parkman's opinion as follows:
>
> > [Dr. Parkman's] conclusions are substantially vague, and do not
> > provide concrete functional limitations. Further, Dr. Parkman noted
> > the claimant likely put forth variable effort on examination, which
> > skewed some findings. Nevertheless, the undersigned agrees the
> > record shows some difficulty in concentration, prompting the
> > limitations assigned. This opinion is assigned partial weight as
> > overly vague but somewhat consistent with the record.

(AR 24.) Petitioner argues the ALJ improperly exaggerated Dr. Parkman's statement

concerning Petitioner's efforts on examination, and that Dr. Parkman in fact did provide

functional limitation conclusions which the ALJ did not adequately discuss with

reference to the record.

The Court agrees the ALJ took Dr. Parkman's statement concerning Petitioner's

efforts out of context. Dr. Parkman performed a memory test to gauge Petitioner's

immediate auditory recall, as well as tests of her short term and recent remote memory.

(AR 426.) In Dr. Parkman's opinion, Petitioner's performance on the immediate auditory

recall test was "unusually poor…and may suggest poor effort on her part on the task."

She did not make a similar observation during any other portions of the testing. Yet, the ALJ extrapolated this statement to infer that Petitioner put forth variable effort on the entire examination, which skewed "some" findings. But, Dr. Parkman noted only that the test results "may" have suggested poor effort on one of the three memory tests administered. Dr. Parkman made no finding that the entirety of her findings, or even her assessment of Petitioner's memory, was "skewed."

"The ALJ need not accept the opinion of any physician…if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002). The ALJ's rejection of Dr. Parkman's opinions on the grounds that they are "vague" makes no attempt to actually discuss the opinions, which are based upon what the ALJ characterized as a "thorough examination" supported by a clinical interview and objective psychological testing. (AR 24.) Nor does the ALJ explain why he credits Dr. Parkman's assessment of Petitioner's difficulty in concentration, which she apparently rated as "fair to poor,"[5] yet does not credit any of her other opinions using the same rating system. The ALJ did not discuss treatment records from Petitioner's counselor at Aces Community Services,[6] where treatment records establish Petitioner participated in individual counseling from December 18, 2015, to October 19, 2016. (AR 489 - 509.) And last, the ALJ did not reconcile his conclusion with that of the

---

[5] Dr. Parkman concluded Petitioner had a "good" ability to perform simple and repetitive tasks, but that her ability to sustain her efforts over tasks over time is "fair to poor."

[6] Dr. Parkman indicated also in her report that Petitioner had been attending counseling at ACES and seeing a counselor every two weeks for the last two years. (AR 422.)

state agency reviewing physician, Dr. Michael Spackman, who accorded Dr. Parkman's opinion "substantial weight." (AR 155.)

The ALJ must do more than offer conclusory findings, and must provide clear and convincing reasons set forth in sufficient detail when discounting the opinion of an examining physician. The Court finds the ALJ failed in his assessment of Dr. Parkman's opinions here, because he did not provide a detailed, reasoned, and legitimate rationale for discounting Dr. Parkman's findings.

## CONCLUSION

Based upon the foregoing, the Court will grant Petitioner's request for review, and remand for further proceedings consistent with the Court's memorandum decision and order.

## ORDER

**NOW THEREFORE IT IS HEREBY ORDERED:**

1)      Plaintiff's Petition for Review (Dkt. 1) is **GRANTED**.

2)      This action shall be **REMANDED** to the Commissioner for further

proceedings consistent with this opinion.

3)      This Remand shall be considered a "sentence four remand,"

consistent with 42 U.S.C. § 405(g) and *Akopyan v. Barnhart*, 296 F.3d 852,

854 (9th Cir. 2002).

DATED: March 23, 2020

Honorable Candy W. Dale
United States Magistrate Judge